IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

EDUARDO AVALO,

               Defendant.

CRIMINAL CASE NO.

1:15-CR-00297-ELR-JFK-1

## REPORT AND RECOMMENDATION

Pending before the court is Defendant Eduardo Avalo's motion [Doc. 23] and supplemental motion [Doc. 29] to suppress evidence obtained as the result of the execution of a federal search warrant, signed on July 9, 2015, for his residence located at 9674 Villa Rica Highway, Villa Rica, Georgia 30180. In support of the motion to suppress, Defendant contends that (1) he is entitled to a <u>Franks</u> hearing[1] because the affiant for the search warrant deliberately or with reckless disregard for the truth included misleading information in the affidavit and omitted material information from the affidavit; (2) probable cause is lacking because the affidavit depends on stale information; and (3) probable cause is lacking because of the inclusion of irrelevant

---

[1] <u>See</u> <u>Franks v. Delaware</u>, 98 S. Ct. 2674 (1978).

information in the affidavit that fails to provide a nexus between the evidence being sought and his residence.  [Doc. 23 at 12-21; Doc. 29 at 2-6].  The Government opposes the motion to dismiss contending that Defendant has not made a sufficient showing to entitle him to a <u>Franks</u> hearing and that the affidavit provides probable cause for the search.  [Doc. 31, Exhibit ("Exh.") 1 ("Search Warrant Application & Affidavit"), Exh. 2 ("Search Warrant")].  After consideration of the arguments, of relevant legal authority, and of the Search Warrant Application & Affidavit, the court recommends that the motion to suppress be denied.

## I.    Search Warrant, Application & Affidavit

The Application for the Search Warrant seeks evidence, contraband, illegally possessed items and the like concerning violations of 18 U.S.C. § 922(g), that is, felon in possession of a firearm.  [Application].  The Search Warrant authorizes the seizure of U.S. currency, indicia of residency, firearms, paraphernalia and ammunition and secured and/or locked safes, cabinets or boxes wherein currency or firearms may be secreted.  [Search Warrant].  In support of the Search Warrant for 9674 Villa Rica Highway, Villa Rica, Georgia 30180[2] and the premises, including curtilage,

---

[2]Attached to the Search Warrant and the Application is a copy of a satellite view of this address, including the surrounding land and driveway; this view is also depicted in the attachments to the Government's response to the motion to suppress.

2

outbuildings and vehicles located thereon, Special Agent E. Tyrone Lawary, Drug Enforcement Administration ("DEA"), hereinafter Affiant, provided an Affidavit for consideration by Magistrate Judge Linda T. Walker. [Affidavit]. The following facts are deemed pertinent to the Franks challenge to the Search Warrant and to whether the Affidavit establishes probable cause.

Affiant has been a Special Agent with DEA since March 2012 and was previously employed with the Marietta Police Department for eleven years, including approximately six years as a narcotics investigator. [Affidavit ¶ 5]. He received training at Quantico, including regarding the methods and means employed by drug traffickers to distribute and conceal drugs and proceeds. Affiant's experience includes writing and executing search and arrest warrants, participating in drug investigations, and using electronic surveillance to conduct investigations, such that he is familiar with patterns of activity employed by drug traffickers and with how they conduct their drug trafficking business. [Id. ¶¶ 6-10]. The facts alleged in the Affidavit are based on Affiant's personal knowledge, information provided by other investigating agents, officers and analysts, electronic surveillance and reports from other law enforcement agencies. [Id. ¶ 11].

_____

[Search Warrant, Attachment A; Doc. 31, Exhs. 4 and 6].

In support of probable cause for the Search Warrant, Affiant alleges the following facts.  DEA began an investigation in October 2014 of Victor Capote who was identified by a confidential source, identified as CS-1, as a supplier of illegal drugs.[3]  [Id. ¶ 14].  On November 4, 2014, DEA directed CS-1 to arrange a meeting with Capote to discuss the purchase of a quantity of methamphetamine, and CS-1 called Capote advising s/he wanted to buy one-half pound of methamphetamine.  [Id. ¶ 15].  On November 5, 2014, at approximately 3:16 p.m., CS-1 and Capote during a telephone conversation agreed to meet at a motel in Villa Rica, and agents observed Capote arriving in a Saturn Vue for the meeting.  The agents observed Capote meet with CS-1, and Capote delivered a small quantity of heroin.[4]  CS-1 asked about the methamphetamine, and Capote quoted a price of $800 per ounce.  In response to an

---

[3]Affiant provided the following information about CS-1:  s/he is a DEA source since 2011; since 2014, information s/he provided resulted in five arrests in Atlanta and three arrests and monetary and drug seizures in San Jose, California; source's criminal history includes felony drug and weapon charges and providing false name, address and birth date to law enforcement; source is not currently facing criminal charges and is providing information for financial benefit.  Affiant also states that CS-1's information "has been corroborated through recordings of consensually monitored telephone calls and meetings, toll records/pen registers, and court-authorized tracker data."  [Id. ¶ 14 n.1].

[4]Each meeting was recorded.  And before and after each meeting, CS-1 and his or her vehicle were thoroughly searched for contraband.  [Id. ¶ 16 n.2].

4

inquiry when the deal could be done, Capote responded, in a little while and that he would be back in "like 35 minutes." [Id. ¶ 16]. Affiant then states that agents followed Capote to 9674 Villa Rica Highway, Villa Rica, Georgia, the location to be searched, where Defendant Avalo resides but that agents stopped physical surveillance about a mile from the residence. At that point, agents utilized court-authorized tracker data from the Saturn Vue to confirm that Capote traveled to Defendant's residence.[5] [Id. ¶¶ 17-18]. Shortly after arriving, Capote made a call to CS-1 advising that nobody was there, that the guy who had the drugs was not there, and that the deal would have to be tomorrow. [Id. ¶ 18].

The next time Capote saw CS-1 was an unannounced visit on November 19, 2014, at approximately 6:06 p.m., during which Capote discussed selling CS-1 eight ounces of methamphetamine for $700 per ounce. After the meeting, based on the tracker data, Capote traveled to Defendant Avalo's residence. At approximately 6:51 p.m., CS-1 called Capote to order two ounces of methamphetamine. [Id. ¶ 19]. On November 20, 2014, CS-1 was instructed to contact Capote to finalize the drug deal,

---

[5]Affiant stated that Georgia driver services records show this residence as Defendant's and that in July 2014 local authorities arrested Defendant at this residence for trafficking cocaine, marijuana and methamphetamine. The arrest was based on a confidential source making several controlled drug buys from Defendant at the residence. Defendant currently was on bond for those charges. [Id. ¶ 17].

5

and at approximately 2:14 p.m., agents observed Capote, in the Saturn Vue, arrive to meet CS-1 as arranged at a store located in Villa Rica.  An undercover officer ("UC") was with CS-1 for the meeting.  They relocated to a restaurant for the meeting, and the UC paid Capote $1,600 for 52.2 grams of methamphetamine.  According to tracker data from the Saturn Vue, Capote had traveled to Defendant Avalo's residence before meeting with the CS-1 and the UC.  [Id. ¶ 20].

And on April 15, 2015, at approximately 6:16 p.m., through court-authorized electronic monitoring, agents intercepted a conversation between Capote and Elgin Jordan, during which Jordan asked about "hash."  Capote advised that "he would talk to the guy (presumably his source of supply)."  [Id. ¶¶ 21-22].  Another conversation was intercepted at approximately 6:21 p.m., and Capote advised Jordan that "he was on his way to the guy (presumably his source of supply)" and would call Jordan when he arrived.  [Id. ¶ 22].  Tracker data on Capote's PT Cruiser showed that he traveled from his residence directly to Defendant Avalo's residence and then to the Home Depot on Research Center Atlanta Drive - "a location CAPOTE has used for conducting drug business during this investigation."  [Id. 23].  For that reason, Affiant stated his belief that the drug deal with Jordan was completed there.  [Id.].

6

Affiant next set forth the information provided by a second confidential source, identified as CS-2, who DEA agents began talking to in June 2015 about an individual named "Ed" who sold drugs.  The Affiant believed "Ed" to be short for "Eduardo." [Id. ¶ 24].  CS-2, although at that time inactive, had been cooperating with a local drug task force since 2010 and had provided information resulting in the arrest and conviction of four individuals, the seizure of $52,000 in U.S. currency and the seizure of methamphetamine.  This informant provided cooperation resulting in the July 2014 investigation at Defendant Avalo's residence.   According to Affiant, CS-2's information "has been corroborated by agents' knowledge gained through this investigation, information given by other confidential sources, by pole camera and physical surveillance, and toll records."   [Id. ¶ 24 n.4].  CS-2's criminal history includes burglary, weapons and robbery convictions as well as a 1985 arrest for providing a false name to law enforcement.   [Id.].  CS-2 advised that s/he visited Defendant Avalo's residence in June 2015 and observed an AR-15 rifle Defendant was seeking to sell and that in the previous three months had observed an AR-15 rifle, a 9 mm handgun, a revolver, a .25 caliber handgun and an antique handgun at the residence.  Defendant also advised CS-2 that he had a 10 mm handgun.  Affiant stated

7

that Defendant is a felon based on a 1981 felony escape conviction making his firearm possession unlawful.  [Id. ¶¶ 24-25].

Affiant then provided details about the July 2014 arrest of Defendant at his residence for drug trafficking and the search of the residence that resulted in the seizure of two .22 caliber rifles.  Also, in August 2004, DEA arrested Defendant at his residence for drug trafficking and seized a loaded .357 Taurus handgun and box of .357 Magnum ammunition.  [Id. ¶¶ 26-27].

Additional facts will be set forth as necessary during discussion of the motion to suppress.

## II.   Discussion

### a.   **Franks** Hearing

Defendant first contends that due to the inclusion of materially false information in the Affidavit and the omission of material information from the Affidavit, he is entitled to a Franks hearing.  [Doc. 23 at 12-17; Doc. 29].  Defendant contends that Affiant's statements that Capote traveled to Defendant Avalo's residence either before or after the meetings with CS-1 or Jordan on November 5, 2014, November 20, 2014, and April 15, 2015, based on the vehicle tracker data, are knowing and/or reckless misrepresentations and that the failure to include in the Affidavit a statement that

8

Capote never traveled to Defendant's residence, based on the same data, is a knowing and/or reckless omission from the Affidavit.   Defendant bases his argument on Affiant's statement in a report dated November 6, 2014, that on November 5, 2014, Capote "had arrived in the area of 9674 Villa Rica Hwy . . ." but not at that residence and on the printout of the GPS tracker information for Capote's vehicles that allegedly indicates that he never traveled to the address located at 9674 Villa Rica Highway. [Doc. 23, Exhs. 1 and 2].   These alleged misrepresentations and this omission according to Defendant resulted in the false and misleading assertion that Defendant was the drug source of supply for Capote.[6]   [Id.].

In Franks, 98 S. Ct. 2674, the Supreme Court held that where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant

---

[6]Defendant also appears to take issue with Affiant's statement that he believed Capote's trip to the Home Depot on April 15, 2015, resulted in the delivery of a quantity of hashish to Jordan that had been obtained from Defendant because the transcripts of the conversations between Capote and Jordan, although indicating that a meeting would take place, never stated where that meeting would occur. [Doc. 29 at 3-4].   Affiant did not make any assertion in the Affidavit that the recorded conversations included discussions about the meeting location. In fact, Affiant clearly stated the basis for his belief that "CAPOTE and JORDAN met to complete the hashish deal" at the Home Depot. [Affidavit ¶ 23]. He drew that conclusion from the fact that the Home Depot was "a location CAPOTE has used for conducting drug business in this investigation." [Id.].   The court will not further address this statement.

affidavit, and if the allegedly false statement was necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request to determine admissibility of the fruits of the search.  Franks, 98 S. Ct. at 2684-85; see also United States v. Sarras, 575 F.3d 1191, 1218 (11th Cir. 2009).  "[T]o prevail in a Franks challenge one must establish (1) that information contained in an affidavit was untrue, (2) that inclusion of the untrue information was either deliberate or in 'reckless disregard for the truth,' and (3) that the untrue information was an essential element of the probable cause showing relied upon by the judicial officer in issuing the search warrant."  O'Ferrell v. United States, 253 F.3d 1257, 1267 (11th Cir. 2001) (citation omitted).

And Franks is applicable to information omitted from an affidavit for a search warrant.  "[A] warrant affidavit violates the Fourth Amendment when it contains omissions 'made intentionally or with a reckless disregard for the accuracy of the affidavit.'"  Madiwale v. Savaiko, 117 F.3d 1321, 1326-27 (11th Cir. 1997) (citation omitted).  "A party need not show by direct evidence that the affiant makes an omission recklessly.  Rather, it 'is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself.'"  Id. at 1327 (citation omitted); accord

10

United States v. Owden, 345 Fed. Appx. 448, 454 (11th Cir. 2009) (same). "Omissions that are not reckless, but are instead negligent . . . or insignificant and immaterial, will not invalidate a warrant. . . .   Indeed, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." Madiwale, 117 F.3d at 1327; accord United States v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009) ("The defendant bears the burden of showing that, 'absent those misrepresentations or omissions, probable cause would have been lacking.'") (citation omitted).  No Franks hearing is required, if, when the omitted information is added to the affidavit, the affidavit's content still establishes probable cause for the search. Kapordelis, 569 F.3d at 1309; Owden, 345 Fed. Appx. at 454 (if the challenge is based on information omitted from the affidavit, then the showing must be that the "'omission was essential to the finding of probable cause'") (quoting United States v. Arbolaez, 450 F.3d 1283, 1294 (11th Cir. 2006)).

Accordingly, to mandate a Franks evidentiary hearing,

the [defendant's] attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements

11

of witnesses should be furnished, or their absence satisfactorily explained.   Allegations of negligence or innocent mistake are insufficient.   The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant.  Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.  On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.  Whether he will prevail at that hearing is, of course, another issue.

Franks, 98 S. Ct. at 2684-85.  The court, when applying this standard to Defendant's request for a Franks hearing, finds that Defendant has not made a substantial preliminary showing that material misrepresentations were intentionally and/or recklessly included in the Affidavit or that material information was intentionally and/or recklessly omitted from the Affidavit or, alternatively, a showing that such alleged misrepresentations or omissions undermined the probable cause otherwise set forth in the Affidavit as necessary for a Franks hearing to be held.

Defendant, as noted, contends that Affiant included material misrepresentations in the Affidavit regarding Capote's travel to Defendant's residence based on the vehicle tracker data.  In support of that contention, Defendant relies on a report dated November 6, 2014 - which the court notes has nothing to do with the tracker data for

12

November 20, 2014, or April 15, 2015, and on the street addresses shown on the GPS data printout for the trackers on Capote's vehicles.  As the Government points out, the wording of the November 6, 2014, report does not call into question Affiant's statements in the Affidavit regarding the tracker data, and this conclusion is supported by the fact that the investigative report goes on to state that physical surveillance observed Capote's Saturn Vue turning out of the driveway to Defendant's residence at 7:15 p.m. (after the tracker data placed him there) on November 5, 2014.  [Doc. 23, Exh. 2].  And Defendant's reliance on the GPS data, specifically the street addresses associated with the latitude and longitude position of the tracker, without adequate investigation into how that association is made simply is insufficient to call into question Affiant's reliance on the tracker data for the assertions in the Affidavit.[7]  And when the latitude and longitude data from the tracker for the dates in question - which does not require any interpretation by a mapping service - is plotted on the plat of land where Defendant's residence is located [Search Warrant, Attachment A; Doc. 31, Exh. 4], Affiant's statement that Capote traveled to Defendant's residence is confirmed not

---

[7]The fallacy of relying on the address information on the GPS data printout from the vehicle trackers is demonstrated by the fact the same latitude and longitude information for MapQuest, as compared to Google, translates into the physical address for Defendant's residence at 9674 Villa Rica Highway.  [Doc. 31, Exh. 5].

13

refuted.  He did not misrepresent where Capote traveled, and his resulting conclusion that Defendant was Capote's source of supply for drugs based on that information was not misleading.  With respect to the alleged omission, as discussed, Defendant is simply wrong in his argument that the tracker data establishes that Capote never traveled to Defendant's residence.[8]

And the additional facts set forth in the Affidavit support the Magistrate Judge's finding of probable cause.  The issuing magistrate judge, in deciding whether to sign a search warrant, is "'simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before [her], including the veracity and the basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000) (quoting Illinois v. Gates, 103 S. Ct. 2317, 2332 (1983)) (internal quotation marks omitted).  In this regard, "'probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts[.]'"  United States v. Brundidge, 170 F.3d

---

[8]Furthermore, even if the tracker data for the two vehicles operated by Capote did not reflect that Capote traveled to Defendant's residence in one of those two vehicles, that information would not support a statement by Affiant that Capote *never* traveled to Defendant's residence.

14

1350, 1352 (11th Cir. 1999) (quoting <u>Gates</u>, 103 S. Ct. at 2329).  For this reason, "[c]ourts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." <u>United States v. Miller</u>, 24 F.3d 1357, 1361 (11th Cir. 1994) (citing <u>Gates</u>, 103 S. Ct. at 2331-32; <u>United States v. Ventresca</u>, 85 S. Ct. 741, 746 (1965)); <u>accord</u> <u>United States v. Hatcher</u>, 300 Fed. Appx. 659, 663 (11th Cir. 2008) (same).  In reviewing the issuance of the Search Warrant, the undersigned must determine only that Magistrate Judge Walker had a "substantial basis" for concluding that probable cause existed to uphold the warrant.  <u>See</u> <u>Gates</u>, 103 S. Ct. at 2331; <u>see also</u> <u>Massachusetts v. Upton</u>, 104 S. Ct. 2085, 2085 (1984) (per curiam).  The validity of the warrant is considered based on the totality of the circumstances.  <u>See</u> <u>Brundidge</u>, 170 F.3d at 1352.

In addition to the information about the tracker data placing Capote at Defendant's residence in conjunction with three drug transactions, the Affidavit included information regarding Defendant's arrest at his residence in July 2014 for drug sales that had occurred in that residence which resulted in the seizure of two .22

15

caliber rifles and arrest in August 2004 for drug trafficking which resulted in the seizure of a loaded .357 Taurus handgun and a box of ammunition.  [Affidavit ¶¶ 17, 26-27].  Also included in the Affidavit is the information provided by CS-2 in June 2015 about an individual named "Ed" who sold drugs.[9]  [Id. ¶ 24].  CS-2 advised that s/he visited Defendant Avalo's residence in June 2015 and observed an AR-15 rifle Defendant was seeking to sell and that in the previous three months had observed an AR-15 rifle, a 9 mm handgun, a revolver, a .25 caliber handgun and an antique handgun at the residence.  Defendant also advised CS-2 that he had a 10 mm handgun.[10]  [Id. ¶ 24].  As will be discussed further *infra*, based on the inferences properly drawn from the facts presented, this information supported a finding that firearms and associated evidence would be located in Defendant's residence in July 2015.

And Affiant provided sufficient information for the Magistrate Judge to evaluate and to determine the reliability of the information provided by CS-2.  "If an informant is mentioned in the affidavit, the affidavit must demonstrate the informant's

---

[9]The Affiant believed "Ed" to be short for "Eduardo."  [Id. ¶ 24].

[10]Affiant stated that Defendant is a convicted felon making his firearm possession unlawful.  [Id. ¶ 25].

16

'veracity' and 'basis of knowledge.'" United States v. Johnson, 444 Fed. Appx. 424, 425 (11th Cir. 2011) (quoting Gates, 103 S. Ct. at 2332). "However, '[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.'" Id. (quoting United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002)). The basis of CS-2's knowledge is set forth in the Affidavit. S/he is the informant who provided cooperation resulting in the 2014 investigation at Defendant Avalo's residence and in the seizure of firearms at that time. And the information provided for the months leading up to July 2015 regarding firearms in the residence is based on his or her personal observations at Defendant's residence. Although inactive in June 2015, for an unknown reason which does not undermine his or her credibility, CS-2 had been cooperating with a local drug task force since 2010 and had provided information resulting in the arrest and conviction of four individuals, the seizure of $52,000 in U.S. currency and the seizure of methamphetamine which, on the other hand, does support a finding of credibility. Affiant also stated that CS-2's information "has been corroborated by agents' knowledge gained through this investigation, information given by other confidential sources, by pole camera and physical surveillance, and toll records." [Id. ¶ 24 n.4]. And see Martin, 297 F.3d at 1314 (noting that "sufficient independent corroboration

17

of an informant's information" can provide a basis for establishing veracity); United States v. Foree, 43 F.3d 1572, 1576 (11ᵗʰ Cir. 1995) (corroborating evidence gathered by officers can provide indicia of reliability).  Affiant provided CS-2's criminal history for the Magistrate Judge to consider which includes burglary, weapons and robbery convictions as well as an 1985 arrest for providing a false name to law enforcement.  [Id.].[11]

For all of the foregoing reasons, the court finds that Defendant has not made a substantial preliminary showing to entitle him to a Franks hearing.  The allegedly material, false information which Defendant contends was deliberately or recklessly included in or omitted from the Affidavit regarding data from the trackers on Capote's vehicles was neither false nor misleading.  Furthermore, this information is not essential to a finding of probable cause.  See O'Ferrell, 253 F.3d at 1267 (defendant, finally, must demonstrate "that the untrue information was an essential element of the probable cause showing relied upon by the judicial officer in issuing the search warrant"); Owden, 345 Fed. Appx. at 454 (if the challenge is based on information

---

[11]Likewise, the Affidavit set forth a sufficient basis for the Magistrate Judge to determine the reliability of the information provided by CS-1 and to find that informant reliable.  [Affidavit ¶ 14 n.1].

omitted from the affidavit, then the showing must be that the "'omission was essential to the finding of probable cause'") (citation omitted).

    **b.**    **Staleness-Nexus to Residence**

Defendant next argues that the information in the Affidavit for the Search Warrant did not establish probable cause to believe that evidence of crimes for which the warrant was being sought, that is, felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), would be found in Defendant's residence in July 2015. Defendant contends that the information in the Affidavit as identified by him, that is, the investigation of Capote beginning in October 2014 and continuing in November 2014 allegedly establishing Defendant as a source of supply for methamphetamine and in April 2015 allegedly establishing Defendant as a source of supply for hashish, does not establish probable cause that evidence of the identified criminal activity would be found in his residence when the warrant was issued. He also argues that this information concerning Defendant's alleged drug distribution is irrelevant to the determination as to whether Defendant was in possession of firearms at the time the warrant issued. [Doc. 23 at 17-21]. The Government responds that the Affidavit includes sufficient facts to establish that evidence of Defendant's unlawful possession

of firearms would be in the residence in July 2015 and that evidence of Defendant's

drug dealing is relevant to that finding.  [Doc. 31 at 15-21].

When the challenge raised is a lack of nexus between the place searched and the

items being sought and involves the residence of a defendant, the Eleventh Circuit

Court of Appeals has stated that "the affidavit must supply the authorizing magistrate

with a reasonable basis for concluding that Defendant might keep evidence of his

crimes at his home, i.e., a 'safe yet accessible place.'"  Kapordelis, 569 F.3d at 1310

(quoting United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir. 1999)).  The court in

Kapordelis further stated in connection with searching a suspect's home:

> "The justification for allowing a search of a person's residence when that
> person is suspected of criminal activity is the common-sense realization
> that one tends to conceal fruits and instrumentalities of a crime in a place
> to which easy access may be had and in which privacy is nevertheless
> maintained.  In normal situations, few places are more convenient than
> one's residence for use in planning and hiding fruits of a crime."

Id. (quoting United States v. Green, 634 F.2d 222, 226 (5th Cir. Unit B 1981)); see also

United States v. Alexander, 574 F.3d 484, 490 (8th Cir. 2009) ("'Judges may draw

reasonable inferences from the totality of the circumstances in determining whether

probable cause exists to issue a warrant. . . .'") (citation omitted); United States v.

Wiley, 475 F.3d 908, 916 (7th Cir. 2007) ("'. . . issuing judges are entitled to draw

20

reasonable inferences about where evidence is likely to be found given the nature of the evidence and the type of offense'") (citation omitted).  Therefore, while the affidavit must establish a link between the defendant and the residence to be searched as well as between the residence and criminal activity, "[t]here need not be an allegation that the illegal activity occurred at the location to be searched . . . ." Kapordelis, 569 F.3d at 1310 (citing, e.g., United States v. Anton, 546 F.3d 1355, 1358 (11th Cir. 2008) (holding that evidence establishing that a defendant possesses contraband of the type that would normally be expected to be hidden in a residence will support the search); United States v. Jenkins, 901 F.3d 1075, 1080-81 (11th Cir. 1990) (finding that nexus between the items to be seized and a defendant's residence can be established circumstantially if the contraband is capable of being hidden therein)).  In this case, in addition to any reasonable inferences drawn from the information in the Affidavit, the facts set forth in the Affidavit establish that the alleged criminal activity, unlawful possession of firearms, occurred in Defendant's residence.  Defendant, however, contends that information to be stale.  Accordingly, the issue before the court is whether Magistrate Judge Walker had a "substantial basis" for concluding that probable cause existed to search the residence at the time the warrant issued.  See Gates, 103 S. Ct. at 2331.

21

The "staleness doctrine in the context of probable cause . . . requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues." United States v. Bervaldi, 226 F.3d 1256, 1264 (11th Cir. 2000); see also United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994) ("To satisfy the probable cause standard, the government 'must reveal facts that make it likely that the items being sought are in that place when the warrant issues.'") (quoting United States v. Domme, 753 F.2d 950, 953 (11th Cir. 1985)). "Warrant applications based upon stale information fail to create a probable cause that similar or other improper conduct is continuing." Harris, 20 F.3d at 450. In deciding whether information in a warrant is stale, each case is decided "based on the unique facts presented[,]" id., and "[t]here is no particular rule or time limit for when information becomes stale[,]" Bervaldi, 226 F.3d at 1265. "In this case-by-case determination[, a court] may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." Harris, 20 F.3d at 450 (citations omitted). And, in considering these factors, as noted, Magistrate Judge Walker may rely on reasonable inferences drawn from the facts stated in the Affidavit.

22

The criminal conduct upon which the Affidavit for the Search Warrant was based is not discrete but ongoing.  The historical information set forth in the Affidavit regarding Defendant's past possession of firearms (which Defendant ignores in making his argument), that is, when he was arrested at his residence for drug trafficking in August 2004 and at his residence in connection with the sale of drugs from the residence in July 2014 [Affidavit ¶¶ 17, 26-27], when considered in light of the recent observation of firearms possessed by Defendant in his residence in the three months before the warrant was signed (which Defendant likewise ignores), that is, the two AR-15 rifles, the 9 mm handgun, the revolver, the .25 caliber handgun and the antique handgun [Id. ¶¶ 24-25], supports the reasonable inference that Defendant's illegal activity concerning firearms is ongoing.

This inference is reinforced by the understanding that unlawful firearm possession, in and of itself, "is an ongoing crime, so 'old' information is relevant to the question of present probable cause."  United States v. Piloto, 562 Fed. Appx. 907, 913 (11th Cir. 2014) (noting that because "firearms are not consumable items[,] it would be reasonable to believe that [the defendant] continued to possess his gun in his home for at least 13 months"); and see United States v. Deering, 296 Fed. Appx. 894, 898 (11th Cir. 2008) ("common sense suggests that firearms . . . are generally not items

that are dispersed quickly, particularly when multiple firearms are possessed in the residence for personal use"); United States v. Truitt, 2015 WL 2452944, at *12 (N.D. Ga. May 13, 2015) (same).  Furthermore, Magistrate Judge Walker was entitled to draw reasonable inferences from the facts stated in the Affidavit to conclude that Defendant continued to possess firearms in his residence at the time the warrant was issued.  See United States v. Williams, 544 F.3d 683, 686-87 (6th Cir. 2008) (finding that "the warrant application demonstrated 'continuing and related illegal firearm activity,' from which the issuing judge could infer that evidence pertaining to the handguns would be found in [the defendant's] residence") (citations omitted); United States v. Umansky, 291 Fed. Appx. 227, 228 n.1 (11th Cir. 2008) (noting that in reviewing the sufficiency of probable cause for a search warrant, the appellate court "give[s] due weight to the inferences that the judge and law enforcement officers drew from the facts").

And, contrary to Defendant's argument, the facts supporting the conclusion that Defendant was engaged in ongoing drug distribution involving his residence, from as early as 2004 and through at least April 2015, further supports a finding of probable cause.  These facts are not immaterial to the probable cause determination because, as the Government notes, firearms are tools of the drug trade and a reasonable inference

24

may be drawn that an individual engaged in drug trafficking would have readily accessible to him firearms.  See, e.g., United States v. Prather, 279 Fed. Appx. 761, 766 (11th Cir. 2008) ("When law enforcement officers stumble across hidden guns during a lawful search for drugs, they are allowed to draw the reasonable inference that the guns may be related to drug trafficking occurring at the location."); United States v. Smith, 918 F.2d 1501, 1509 (11th Cir. 1990) (firearms are "'tools of the trade'") (citation omitted); United States v. Acosta, 807 F. Supp. 2d 1154, 1261 (N.D. Ga. 2011) ("Due to the fact that firearms are tools of the drug trade, the firearms were properly seized as evidence in plain view."); United States v. Brown, 551 F. Supp. 2d 947, 950 (D. Ariz. 2008) (listing numerous cases recognizing "'the close relationship between drugs and firearms in the narcotics trade'") (citations omitted).  Accordingly, evidence of ongoing drug trafficking out of Defendant's residence supports the inference that he possessed firearms in that residence when the warrant issued.

For these reasons, the court finds that the Affidavit provided the issuing magistrate judge "with a reasonable basis for concluding that Defendant might keep evidence of his crimes[, that is, the unlawfully possessed firearms] at his home, i.e., a 'safe yet accessible place.'"  Kapordelis, 569 F.3d at 1310 (citation omitted).  And the court finds that, when considering the totality of the information set forth in the

25

Affidavit, those facts provided Magistrate Judge Walker with a substantial basis for concluding that there was probable cause to believe evidence and fruits of the unlawful firearms possession cited in the Search Warrant would be found in Defendant's residence in July 2015.  See Gates, 103 S. Ct. at 2331.

     **c.**    **Good Faith**

     Finally, as the Government correctly argues, even if the Affidavit did not establish probable cause, the evidence seized from Defendant's residence should not be suppressed because the good faith exception to the exclusionary rule should be applied in this case.  [Doc. 31 at 21-23].  In United States v. Leon, 104 S. Ct. 3405 (1984), and Massachusetts v. Sheppard, 104 S. Ct. 3424 (1984), the Supreme Court established a good faith exception to the exclusionary rule where officers placed reasonably objective reliance on a search warrant later determined to be defective.  In United States v. Accardo, 749 F.2d 1477 (11th Cir. 1985), the Eleventh Circuit Court of Appeals discussed the good faith exception established by the Supreme Court. With the exception of cases "where the issuing magistrate wholly abandoned his judicial role[,]" or where "a warrant [is] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[,]'" or where "a warrant may be so facially deficient – i.e., in failing to particularize the

26

place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid[,]" the good faith exception applies.  Id. at 1480 & n.4 (citations omitted).  The good faith exception "require[s] suppression 'only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'"[12]  Id. at 1480 (quoting Leon, 104 S. Ct. at 3422).  In making this decision, the totality of the circumstances surrounding issuance of the search warrant may be considered.  Id. at 1481.

The Search Warrant for Defendant's residence was not "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[.]'"  Leon, 104 S. Ct. at 3421 (citation omitted).  The court notes that the Affidavit supporting the Search Warrant was not a "'bare-bone' statement of nothing more than conclusory allegations" which the Supreme Court in Leon found indicative of warrants falling within the third exception to the good faith doctrine.  See United States v. Glinton, 154 F.3d 1245, 1257 (11th Cir. 1998).  The Affidavit included details about Affiant's training and experience, about information related

---

[12]As the court determined *supra*, the Affidavit did not include intentionally or deliberately reckless misrepresentations or material omissions.

from confidential informants, about prior law enforcement activity involving Defendant, and about surveillance conducted surrounding Defendant's illegal drug distribution. This Affidavit presented much more than conclusory, "bare-bone" assertions for consideration by the Magistrate Judge. The Affidavit provided factual details for the Magistrate Judge to consider and evaluate. The law enforcement officers were, therefore, entitled to rely upon her evaluation and determination that "given all the circumstances set forth in the affidavit before [her], there [was] a fair probability that contraband or evidence of a crime [would] be found in a particular place." Gates, 103 S. Ct. at 2332. And the evidence seized from the residence is admissible at trial.

## III.   Conclusion

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendant's motion [Doc. 23] and supplemental motion [Doc. 29] to suppress evidence be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

AO 72A
(Rev.8/82)

**SO ORDERED AND RECOMMENDED** this 20th day of November, 2015.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)